**SAFEWAY STORES, Inc., v. BOWLES, Price Adm'r.**

**No. 149.**

United States Emergency Court of Appeals.

Heard at Washington Sept. 25, 1944.

Decided Nov. 29, 1944.

Elisha Hanson, of Washington, D.C. (Eliot C. Lovett, of Washington, D.C., on the brief), for complainant.

Jacob D. Hyman, Chief, Court Review Price Branch, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Carl H. Fulda and John J. Downey, Jr., Attys., all of the Office of Price Administration, all of Washington, D.C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

MARIS, Chief Judge.

Maximum Price Regulation 355 as originally issued,[1] established two sets of prices for each zone for beef, veal, lamb and mutton cuts. The higher set of prices applied to Groups 1 and 2 stores and the lower set of prices applied to Groups 3 and 4 stores. Groups 3 and 4 stores include any chain store (one of four or more stores under common ownership whose combined annual gross sales in 1942 were $500,000 or more) and any independent store with gross sales of $250,000 or more in 1942. The regulation was amended May 14, 1943 and as amended created a new class of stores consisting of those which had a total sales volume in 1942 of $250,000 or more and which were members of a chain organization having a combined total sales volume in 1942 of $40,000,000 or more.[2] Prices for these stores were fixed 10% below the prices for other Groups 3 and 4 stores.

The complainant is a corporation which operates a chain of retail food stores, some of which had a sales volume of more than $250,000, and the combined sales volume of which was more than $40,000,000 in 1942. It, therefore, falls within the class created by Amendment No. 3.

The complainant filed a protest against the regulation, as amended. Pending action on this protest the Administrator again amended MPR 355.[3] This amendment struck out the classification and 10% differential which had been inserted by Amendment No. 3 and in lieu thereof provided that

"If any group 3 and 4 store had during 1941 a total gross margin of 19% or less on its meat department sales of all items in-

---

[1] April 5, 1943, 8 F.R. 4423.
[2] Amendment No. 3, 8 F.R. 6428.

[3] By Amendment No. 10, issued September 2, 1943, 8 F.R. 12237.

cluding beef, veal, lamb, mutton, pork, poultry, sausage, variety meats and edible by-products, then the ceiling prices applicable to such store for each grade of beef, veal, lamb and mutton cuts shall be 4% lower, adjusted to the nearest cent, than the ceiling prices established herein for group 3 and 4 stores in the appropriate zone."

The complainant also comes within the scope of this amendment, since some of its stores in 1941 realized a total gross margin of not more than 19% on sales in their meat department. Although Amendment No. 10 did give the complainant some relief since it reduced the differential of 10% established by Amendment No. 3 to 4% and applied it only to stores which historically had operated on a comparatively low margin in the meat department, the complainant adhered to its protest.

Some of the contentions here made were also made by the same complainant in Safeway Stores, Inc. v. Bowles, Nos. 111 and 150, 145 F.2d 836, decided today. We there reached the conclusions, contrary to the complainant's views, that classification of retail food stores was justifiable, that sales volume and type of ownership was a valid basis for classification, and that the establishment of maximum prices upon that basis did not compel a change in the complainant's business practices. We accordingly need consider here only two of the contentions raised by the complainant in this case.

First it is urged that the regulation is invalid because in its promulgation the Administrator arbitrarily and capriciously ignored the recommendation of representative members of the industry that there be but one price ceiling for meat at the retail level. Section 2(a) of the Emergency Price Control Act provides that

"Before issuing any regulation or order * * * the Administrator shall, so far as practicable, advise and consult with representative members of the industry which will be affected by such regulation or order."

By an amendment made by the Stabilization Extension Act of 1944[4] it was made explicit that the Administrator "shall give consideration to their recommendations." At a meeting of the meat retailers the representatives there present adopted a resolution urging that only one price ceiling should be established for meats at the retail level. The complainant contends that the Administrator failed to comply with the mandate of the statute that he should consider this recommendation. We think this assertion is contrary to the facts.

The complainant has itself introduced the evidence which proves that the Administrator consulted with these representatives of the retail meat industry. It is clear from the Administrator's opinion that he did obey the statutory mandate by giving consideration to the recommendation for a single price ceiling. Consideration does not necessarily involve acceptance. The Administrator's reasons for refusing to accept the recommendation appear to us entirely persuasive.[5]

The complainant's remaining contention is that the Administrator's departure from the scheme of classification previously followed by him in regulations for retail food stores, his adoption of the 1941 meat margins as a basis for classification for stores selling meats at retail and his choice of a 19% line of demarcation were arbitrary and capricious. We find no merit in this contention.

As we have seen, when the Administrator promulgated MPR 355 he at first utilized the general scheme of classification followed by him in other regulations establishing maximum prices for other food commodities sold at retail food stores. When he compared the maximum prices provided by MPR 355 with those prevailing under the General Maximum Price Regulation he found that the former provided for large increases for certain Group 3 and

---

[4] Stabilization Extension Act of 1944, § 102, c. 325, 58 Stat. 632, 50 U.S.C.A. Appendix § 902(a).

[5] See the discussion of this point in the Administrator's opinion of May 24, 1944 denying the protest against Amendment 3 to MPR 355 in which he said "The alternative of a single maximum price for small stores offering many services, and for large self-service stores would be either so high that larger stores would enjoy unprecedented margins, with a consequent increase in prices to the consumer, or so low that it would make continued operation by the small service store impossible." 2 O.P.A. Opinions and Decisions, p. ——.

See also the discussion of this point in Safeway Stores, Inc., v. Bowles, Nos. 111 and 150, 145 F.2d 836, decided today.

Group 4 stores. These increases, in his judgment, were inflationary. He was, therefore, under compulsion to devise a classification which would aid him in effectuating one of the main purposes of the Emergency Price Control Act, the control of inflation. Upon further study of the prices prevailing under GMPR he concluded that in general the lower prices had prevailed in the large chains. In order to bring meat prices back to pre-existing levels the Administrator by Amendment 3 amended MPR 355 so as to establish 10% lower prices for Group 3 and Group 4 stores operated by large chains.

It will be noted that at this stage the Administrator still adhered to the sales volume and type of ownership scheme of classification, since his line of demarcation was between chains which had gross annual sales of $40,000,000 or more and those which had less. This classification, however, still permitted inflationary prices to two types of stores not affected by Amendment 3, namely, some supermarkets independently operated and some stores in chains doing less than a $40,000,000 gross business, which had customarily had margins and prices as low as those in the large chains but which were not subject to the 10% differential. It was then that the Administrator undertook to devise a classification into which would fall not only the large chains but also all other retail food stores which had previous to price control customarily sold meats at low prices. For such a purpose he concluded that the best guide would be the actual historical operating margins of the retail sellers of meats in 1941.

It appeared that in the past there had been about a two cents per pound price differential between the higher priced stores and the lower priced stores. Because of changes brought about by the war (as, for example, the loss of much of the advantages previously enjoyed by reason of large volume buying) the Administrator concluded that the differential to be preserved by the regulation should not exceed one cent per pound or approximately 4% of the maximum prices. From his study of the available data the Administrator found that those Group 3 and Group 4 stores which operated with margins of 19% or less sold at a price level of at least one cent per pound lower than the rest. It was this 19% historical margin basis of classification which in the exercise of his best judgment the Administrator decided would solve the problem of preserving pre-existing price levels. We cannot hold that his judgment in this respect was erroneous.

The amount of a retail distributor's margin is one of the principal factors which determines the price for which he sells his merchandise. We think that the adoption of a classification based on amount of margin which, as we have seen, resulted from the continuous process of subjecting the Administrator's regulation to the realistic tests of actual operation was quite the opposite of arbitrary or capricious action. It must be remembered that lines of demarcation which would exactly preserve all the differentials existing before price control and which would at the same time be simple and clear enough for practical administration are probably not possible to draw. The real question, as we pointed out in Safeway Stores, Inc. v. Bowles, Nos. 111 and 150, 145 F.2d 836, decided today, is whether the formula or classification when applied by the Administrator in the promulgation of his price regulations results in maximum prices which are generally fair and equitable and such as will effectuate the purposes of the act.

In the present case the margins permitted by MPR 355 as amended by Amendment 10 have not been attacked as not fair and equitable either generally or in any specific instance.

A judgment will be entered dismissing the complaint.